Counsel for Appellant, you may proceed. Good morning. May it please the Court, my name is Amy Gilbrow and I represent the plaintiff, Leticia De Guzman. Your Honors, this is a Social Security case. Ms. De Guzman immigrated from the Philippines to the United States in 1992 when she was 45 years old. She has less than an elementary school education. She is unable to speak English and at the time that she alleges disability in January 2003, she was just shy of 55 years old when she stopped working. She was 59 years old on the date of the Administrative Law Judge's decision. When Ms. De Guzman applied for Social Security, she alleged disability due to abdominal problems and these were the focus of the initial and reconsideration denials that were made in this case in 2003. One of the basic problems in this case is that the ALJ relied on a lot of the evidence that was presented during the 2003 period. Well, Counsel, why don't we get to the two issues. First, the credibility determination. There were contradictions, were there not? In her testimony, there were contradictions. There were differences between her testimony at the hearing and the report that she gave back in 2003. My understanding is that the problem is this is all a moving target, that her condition kept changing. Right. So what she said at one time was different than what she said at another time because her circumstances were different. Right. And what I really want the Court to understand is that in March 2004, after she made all those statements relied upon by the ALJ as contradictory, she developed what her orthopedic surgeon, Dr. Mirza, called an incomplete spinal cord injury at ER 246. She had some compression of her brain stem. She had surgery on May 12, 2004, where two of her vertebrae were removed. Her cervical spine from C2 to C6 was fused, and she had titanium plates, cages, and cables placed in her cervical spine. She used a cane. It's undisputed that she continued to use a cane at the time of the hearing, which was recommended by her treating physician, Dr. Vott. So the statements that she made in 2003 were different from the statements that she made at the hearings in 2005 and 2007. But isn't that the function of the administrative law judge to sort out? And if there are inconsistencies, doesn't he have to make a determination as to what's correct and what's not? That is exactly right, and our position is that he did not sort this out in this case. There is no evidence that what he said that he recognized, that the evidence that he was relying upon as contradictory was made during a period when her condition was completely different from the later submitted evidence. But that led me to wonder whether what we don't, really don't have, you have not attempted to divide, she could be disabled for some of this time and not disabled for others of the time, and you've made no attempt to really sort that out either. That's right, and that is because a decision was made by the administrative attorney not to amend the onset date at the hearing and not to amend the onset date before the appeals council. So the judge was considering the entire period. But could the ALJ have, under the statute, have decided that she's, even if there wasn't an amendment, that she's disabled for some period and not another period? Yes, the ALJ can make what's called a partially favorable decision and determine that she was disabled beginning March 2004 when she first presented to the emergency room with weakness in her legs and when they started to do the CT scans that ultimately resulted in the surgery. In fact, there were two hearings in this case because there was an intervening remand. And in the 2005 hearing, the judge actually seemed to indicate that he was considering a closed period of disability. Beginning March 2004, he asked plaintiff's counsel to make arguments regarding why he should make a finding of disability at an earlier date, and she presented him with a brief which indicated that when she first went to see her surgeon, Dr. Mirza, in May 2005, she told him that she thought that the symptoms of her spinal cord injury had actually started when she was working as a hotel maid. And I think that's why the administrative attorney made a decision not to amend the onset in this case because she was trying to get the most benefits possible for her client. But I think it would have been a reasonable decision in the administrative law judge's case to make a decision that she was not disabled prior to March 2004 when the problems related to her cervical spine began. And I think that would be, we've asked the court to credit as true the opinions of the treating surgeon and the treating physician, most of which were based on the spinal cord injury. And we would certainly accept a finding of disability beginning March 2004. I think that would be appropriate. March 2004 is when he went to the emergency room at Harborview Medical Center and had the MRI done at ER 221. Well, what do we do with the inconsistencies such as her reporting chronic depression to one physician and then to another that she hasn't been depressed for three years, and then telling the Social Security Administration that she couldn't do any household chores because of pain and fatigue and had to spend all day in bed, and then at other points she says she can walk for half an hour before feeling fatigue and that she regularly does do household chores. All of this is in the record, and the ALJ had to figure out which is correct and whether he could credit what she's saying. And I think all of those, again, all of those statements were made before the cervical spine injury occurred. And so I think they weren't really relevant to his determination about disability. So that's my question. Was that brought to the attention of the ALJ? Well, the dates of the cervical spine injury were in the record. The dates of the examinations were in the record. So he was certainly aware of that. I mean, administrative law judges are charged with reviewing the entire record in the case and making a determination. In this case, nowhere in his decision does he really address the fact that there was this intervening circumstance, which was quite significant, which occurred after not only she had made those statements, but after the state agency medical consultants had reviewed that evidence and made a determination that she could perform light-duty work. So all of the medical evidence, the consultative examination that the judge relied on in determining that Mrs. de Guzman could perform light work was all performed before the spinal cord injury. And when the ALJ rejects Dr. Voth's opinion that was made in 2006 or 2005, he rejects it based on all that evidence that came before the cervical spine injury was even apparent in the record without any acknowledgment that there was this problem. What about the depression issue? I thought she was on fairly serious depression medications for most all of this. Thank you. And I recognize that. My arguments about the depression are probably the weakest point in this case, and it rose out of, I guess, my feeling that she was depressed during this entire period. However, there were times when she reported to her physicians, mostly her female treating physicians, that she was feeling depressed. There were other times when she reported she was doing better. In my statement of facts, I tried to point out that when she first goes to see a physician, she's not necessarily reporting her depression. And in my brief, I also pointed out the case of Nguyen V. Chater, which says that individuals sometimes do not have a lot of insight into her depressive symptoms, but her family members are reporting that she is angry, she is irritable, she is moody. Was she on medication? She was taking Paxil, and at one point... The whole period or most of the period? At some point she reported that it did. At one point prior to her cervical spine event, her doctor thought about referring her to a psychologist because she was on the maximum dose of her antidepressant medications, and she was still reporting problems with mood. Your basic point is that your real concern is with the pulse? My real concern, the strongest evidence towards disability and ample evidence towards disability in this case is a physical problem. And in particular, the obvious evidence that she's using a cane, not at her own insistence as requested by the administrative law judge, but at the recommendation of her treating physician. And the vocational expert at the hearing testified that if she needs to use a cane, she is limited to sedentary work. And if Mrs. de Guzman is limited to sedentary work, she's disabled by direct application of the guidelines. The ALJ found that she was not malingering, is that right? That's right. So did he find that she was using a cane, but in order to make believe that she was having a problem? He said it wasn't malingering. Presumably he didn't think that she was using the cane in order to pretend she had a problem. The way he termed it at excerpts at 29 is that her insistence on using her cane in Walker were based on subjective complaints. But there's no doubt that she was falling. Thank you, Counsel. Your time has expired. We'll hear from the government. Good morning, Your Honors. My name is David Burdett, representing the appellee, the Commissioner of Social Security in this matter. And we would respectfully submit that as you implied in your questioning, Judge O'Scallion, there has been no error of law identified here. Appellant has not identified any error of law. My understanding of what she's identified, and it was frankly my completely separate reaction to the record, is that he's making a credibility determination based on statements made at very different times when her circumstances were very different. And that seems to me to be an illegitimate way to make a credibility determination because the truth could well be and seemed to be that they were each truth upon which she said them. Well, that may be, Judge Berzon. That is the ALJ's prerogative, of course, to sort out the facts. For the fact that she had a really serious surgery in the middle of all this and that she was clearly, at least for some period of time, totally disabled during this time period, at least for the period around the surgery when she was undergoing physical therapy and so on. So there was at least some period of time that she couldn't do her housework and so on. And the question is, was it a long enough period? But it was certainly there. And he ignores it entirely. He just ignores it. I did not agree with that characterization. I do not think that he ignores it. I think that he considers it. But he says that, I paraphrase when I say he says, okay. But the findings indicate that he found that it was not a long enough period of time. And with respect to the change circumstances. Can you just tell me in the decision where he addressed this at all? We're talking about Dr. Mirza, who conducted the surgery. No, I want to know where the ALJ, in either of his opinions, addressed the fact that she had this serious surgery in the middle of the time period and that for at least some period of time during that time period she was clearly disabled. I don't think that in this form of words he said, she had a cervical surgery for some period of time. She must have been disabled, but she is now not. But clearly he takes it on board when he looks at Dr. Mirza, who conducted the surgery. So he is aware that a surgery was conducted. When he looks at Dr. McCarthy's opinion, this is in transcript 31, 32. The transcript or the opinion? The evidentiary record. What about in the opinion? I want to know in either of the opinions. That's what I'm talking about. In the evidentiary record, page 30, which is the ALJ's opinion, 30, 31, 32. He's talking about what she's able to do. And I would point out, if I may, I would like to make this point, because I think this is very important, what just came out of an oral argument. It was never alleged at any point that the onset of disability was after the cervical fusion surgery. Throughout this litigation, the position has been that the onset of disability was, I believe, in January of 2003, which was 16 months prior to that. So if what we're now hearing at oral argument is that the onset of disability was not that time, I really don't know what to make of that. I think that we have to rely on the ALJ to make the determination and to sort out the factors. With respect to the statement that was made that I had to be in bed all day, we don't know whether that may have been with respect to a period of time after the surgery. Well, for you to find out, I think you should go and look at the part in the record that he calls and find out what it was. It would be hard to know when that, to look at the different time periods and see whether she was giving accurate information for different time periods. Well, it may have been that there was a period of time when that statement was accurate. It may have been that there were different periods of time when her physical capacities waxed and waned. But she bears the burden of proof of establishing that there was a 12-month duration, beginning from the period of time when she alleges the onset of disability and continuing. The 12 months of her onset of disability, if I'm correct, and I'm sure Ms. Gilbert will correct me if I'm wrong on this, but I think that she alleged disability beginning at the end of January in 2003. If her disability begins in May of 2004, then we've got no case. Is that true? I'm asking you procedurally. If she alleges an onset at some earlier date, but as happened here, the period of the proceedings goes on as long as it does, and it becomes evident that although her onset date is not correct, but at some point before the determination is made she does have an onset, then what? Is that procedure, is she out of luck because she didn't allege it right or is it the responsibility of the ALJ to divide that time up or what? The ALJ, I think I said we've got no case, and that's a little bit misleading. The case that she put forward is wrong. However, the ALJ has the authority to consider potentially a partial period of time and award a partial period of disability. And as Ms. Gilbert indicated on oral argument just a minute ago, in 2005 the ALJ did consider a closed period of disability. That was what she said. If it's been considered and rejected, then it is. But it's not rejected anywhere in the written materials is what troubles me. There's no explanation in the written materials, in either opinion, about why he didn't look at the period from the surgery forward. But he did. He looked at the entire period. He looked at it explicitly throughout this decision. Counsel, I'm looking at page 4 of 11 of the ALJ's 2007 findings and conclusions. I can't tell whether it's page 26 of the record or page 16 of the record. That's 26 of this Court's record. All right, page 26. There is a statement in paragraph 2. The claimant has not engaged in substantial gainful activity since January 30, 2003, the amended onset date. Now, what is meant by the amended onset date? There was an allegation earlier in the administrative proceeding. She alleged that she was disabled from some date even prior to January 30, 2003. I do not recall now how early she said that she was disabled. It was amended to the later date of January 30, 2003, to reflect the fact that she was working at the hotel as a cleaner up until late 2003. Okay, so anything that would have happened subsequent to that date would have been before, obviously prior to the order, but would have been in front of the ALJ? That is correct. Anything that happened subsequent to that date was before the ALJ and is addressed within the balance of this decision. What about the fact that she was using a cane and she was using a cane at the suggestion of her physician? And I really was confused about what the ALJ said about that because he said she wasn't malingering, which seems to me to say that she wasn't trying to fool him by using the cane. So what did he then say about how she was supposed to do her jobs with the cane? No, I agree with that. He doesn't make a finding of malingering. That means that she is not affirmatively trying to sneakily pretend that she's using the cane, but there's evidence that suggests that she didn't need to use the cane. For example, the balancing test where the physical therapist said, I don't know why she's on these assistive devices because she shouldn't need to use them. And that's the point on which the ALJ relies for the determination that doesn't. But he said, I couldn't find it, the balancing test didn't show a reason, but no one seems to doubt that she was in fact falling. She fell a couple of times. Doesn't mean if the PT says that the balancing test doesn't show a reason why she needs to use the cane, that doesn't mean that she needs to carry a cane in through work. But look what we're doing right now, Your Honor. We're talking about the facts. We're making an argument about the facts. And I would submit to you that reasonable minds could differ. I might not have made the same decision that the ALJ made here. But it's not our task here to sort out which is the most likely. Can you give us an explanation about why a person who isn't trying to fool you and is using the cane because she thinks she needs it and is in fact falling, is going to be able to work in a job? Either she's going to have to stop using her cane, although she thinks she needs it and she is in fact falling, or she's going to use her cane, in which case she isn't going to be able to work, right? No. She's a person who has fallen twice, according to the record, in the year 2005. And by the year 2007, she may still believe that she needs that cane, you know, but according to the physical therapist's test, there may be no reason for her to need to use the cane. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and we will hear argument next in Brooks v. Damon.
judges: Hall, O'scannlain, Berzon